# BOSTON SCIENTIFIC CORPORATION
# AGREEMENT CONCERNING EMPLOYMENT
# FOR U.S. EMPLOYEES

In consideration of an agreement by Boston Scientific Corporation or any of its existing or future affiliated subsidiaries or other entities ("**Boston Scientific**") to hire or promote me (the "**Employee**") or to provide additional compensation opportunities to me and for other things of value described below, the Employee agrees as follows and as modified in the Attachments:

1.  Introduction.  During the Employee's career with Boston Scientific, the Employee may have access to or learn of confidential or proprietary information of Boston Scientific.  The Employee also may learn of and work directly with customers, vendors, consultants and employees of these various business entities.  For these reasons, this Agreement Concerning Employment (the "**Agreement**") is designed to protect the legitimate interests of all of the various businesses that comprise Boston Scientific.

This Agreement shall remain in effect during the Employee's employment with Boston Scientific, even if the Employee's position or job location changes or the Employee transfers from one Boston Scientific company to another.  For purposes of this Agreement, the Employee's employment with Boston Scientific will end when the Employee no longer is employed by any Boston Scientific entity.  This Agreement's terms are affected by the location in which the Employee is employed, as stated in Attachment A (the "**State Law Modifications**").

This Agreement is intended to protect Boston Scientific's business and proprietary interests without unreasonably restricting the Employee's ability to work elsewhere if the Employee's employment with Boston Scientific ends.  The Employee agrees to be bound by this Agreement in circumstances of both voluntary and involuntary termination of employment.

2.  Loyalty and Best Efforts.  The Employee shall devote his or her undivided loyalty and best efforts to the business of Boston Scientific.  The Employee shall not, during the period of employment, be engaged in any other occupation, professional or business activity that conflicts with any obligations under this Agreement or provide services to or otherwise aid in any manner any business that competes with Boston Scientific (as described below in Section 5), whether directly or indirectly.  The Employee shall advise Boston Scientific's Executive Vice President of Human Resources or his or her designee (the "**EVP HR**") at such time as an activity either of Boston Scientific or another business presents the Employee with a potential conflict of interest. The Employee shall take whatever action is requested by Boston Scientific to resolve the conflict that Boston Scientific reasonably finds to exist.  The Employee further agrees to comply at all times with Boston Scientific's Code of Conduct and other policies, as they may be amended from time to time.

3.  Protection of Confidential and Proprietary Information.

(a)  Boston Scientific has developed or acquired information that is valuable to Boston Scientific and not generally known to its competitors or the public, including but not limited to materials and information (whether or not reduced to writing) relating to its operating procedures, products, methods, service techniques, designs, specifications, trade secrets, cost data, profits, markets and sales, customer lists, plans for present and future research, development and marketing (together, "**Proprietary Information**").

(b)  The Employee recognizes that Boston Scientific operates and offers services nationwide and globally and is engaged in a continuous program of development of Proprietary Information.  The Employee also acknowledges that the Employee's employment creates a relationship of confidence and trust between the Employee and Boston Scientific with respect to Proprietary Information which is disclosed to or learned by the Employee during the period of employment.  The Employee acknowledges that Boston Scientific would not permit the Employee to have access to Proprietary Information but for the Employee's promises in this Agreement.  The Employee agrees that the Proprietary Information is and will be the exclusive property of Boston Scientific.

(c)  The Employee shall not, without express prior written authorization from the EVP HR, during or after the term of the Employee's employment, disclose any Proprietary Information to any person other than personnel authorized by Boston Scientific.  The Employee further agrees not to (i) use any such information for personal benefit or for any purpose other than furthering the legitimate business interests of Boston Scientific; or (ii) disclose or use for personal benefit any information furnished by a third party to Boston Scientific in confidence.

(d)  The Employee agrees that should the Employee's employment terminate for any reason, the Employee shall immediately deliver to Boston Scientific all property owned by Boston Scientific, and all documents and materials of any nature containing any Proprietary Information, including summaries, analyses, or other format that contains any Proprietary Information, without retaining

any copies, whether in printed or other tangible form, or in electronic or other information storage retrieval systems or any medium from which Proprietary Information may be ascertained or discerned.  The Employee shall also deliver any and all such property, documents and materials at any time during the Employee's employment upon the request of Boston Scientific.

4.     Assignment of Proprietary Inventions.

(a)  The Employee agrees promptly to disclose to Boston Scientific all inventions, discoveries, concepts, designs, developments, methods, modifications, improvements, trade secrets, processes, software, formulae, data, "know-how," databases, algorithms, techniques and works of authorship (together, "**Inventions**"), whether or not patentable or protectable by copyright or trade secret, made or conceived, first reduced to practice, or learned by the Employee, either alone or jointly with others, during the period of employment by Boston Scientific that (i) relate to or are useful in the business of Boston Scientific, or (ii) are conceived, made or worked on at the expense of or during the Employee's work time for Boston Scientific, or using any resources or materials of Boston Scientific, or (iii) arise out of tasks assigned to the Employee by Boston Scientific (together, "**Proprietary Inventions**").

(b)  The Employee acknowledges that all work performed by the Employee is on a "work for hire" basis and does hereby assign, and to the extent assignment cannot now be made, will hereby assign, to Boston Scientific the Employee's entire right, title and interest in and to any and all Proprietary Inventions and related patents, patent applications, trademarks, trademark applications, copyrights, copyright applications, trade secrets, rights in trade secrets and other intellectual property rights worldwide.

(c)  The Employee will cooperate fully with Boston Scientific both during and after employment with Boston Scientific (i) to obtain, maintain and enforce patents, trademarks, copyrights, trade secrets and other intellectual property rights worldwide in Proprietary Inventions and (ii) to sign all papers and provide such assistance as Boston Scientific may reasonably deem necessary or desirable to protect its patents, trademarks, copyrights, trade secrets and other intellectual property rights worldwide in Proprietary Inventions.  If Boston Scientific is unable, after reasonable effort, to secure the Employee's signature on any such papers, the Employee hereby irrevocably designates and appoints each officer of Boston Scientific as the Employee's agent and attorney-in-fact to execute any such papers on the Employee's behalf, and to take any and all actions as Boston Scientific may reasonably deem necessary or desirable to protect its patents, trademarks, copyrights, trade secrets and other intellectual property rights worldwide in Proprietary Inventions.

(d)  The Employee has attached to this Agreement, as Attachment B (the "**List of Inventions**"), a complete list of what the Employee represents to be all Inventions made, conceived, or first reduced to practice by the Employee, alone or jointly with others, prior to the Employee's employment with Boston Scientific (i) with respect to which the Employee has or had any property interest or claim of ownership and (ii) that if made, conceived or first reduced to practice during the Employee's employment with Boston Scientific, would constitute Proprietary Inventions.   If no such Inventions list is attached to this Agreement, the Employee represents that the Employee has no such Inventions at the time this Agreement is signed.

(e)  All Inventions related to any patent, copyright, trade secret, or other intellectual property rights worldwide and related to or useful in the business of Boston Scientific worked on by the Employee during the Employee's period of employment or within a period of one (1) year after the termination of employment with Boston Scientific shall be presumed to have been conceived during the Employee's employment with Boston Scientific and shall therefore be deemed a Proprietary Invention; *provided* that the Employee may overcome the presumption with respect to the one (1) year period following employment by proving that such conception occurred exclusively following employment with Boston Scientific and without the use of Proprietary Information.

(f)  **For all California and Minnesota Employees:  If the Employee is based by Boston Scientific in California or Minnesota, Boston Scientific hereby informs the Employee (pursuant to Section 2872 of the California Labor Code and Section 181.78 of the Minnesota Statutes) that the assignment provisions of this Section 4 do not apply to any Invention that qualifies under the provisions of Section 2870 of the California Labor Code or Section 181.78 of the Minnesota Statutes**.  Specifically, Boston Scientific hereby informs the Employee that this exclusion applies to any Invention that is developed entirely on the Employee's own time without using Boston Scientific's equipment, supplies, facilities or Proprietary Information except for those Inventions that either:

(i)  Relate at the time of conception or reduction to practice of the Invention directly to Boston Scientific's business, products, or actual or demonstrably anticipated research or development of Boston Scientific; or

(ii)  Result from any work performed by the Employee for Boston Scientific (collectively, "**Excluded Inventions**").

(g)  **For Employees in other states:**  The exclusion set forth in Section 4(f) above also applies to Inventions that fall within the definition of Excluded Inventions and are

made or conceived, first reduced to practice or learned by the Employee, either alone or jointly with others, while the Employee is based by Boston Scientific in **Washington, Illinois, Delaware, Kansas, and North Carolina** or any other state that has a statutory provision restricting the scope of assignable inventions to an extent similar to the limitations applicable to California and Minnesota employees pursuant to Section 4(f).

5. <u>Additional Definitions</u>. The Employee understands that:

(a) "**business that competes with Boston Scientific**" means any entity or person that designs, develops, manufactures, markets, licenses or sells any products or services that have a purpose, design or function competitive with or similar to that of any product or service of Boston Scientific, either in existence or in development while the Employee worked for Boston Scientific. Boston Scientific's business is worldwide in scope. Accordingly, there is no geographic limitation in defining a business that competes with Boston Scientific. When used in reference to a business that has many different products and services, the term "business that competes with Boston Scientific" refers only to those recognized divisions, subsidiaries or joint ventures that include operations involving the design, development, manufacture, marketing, licensing or sale of any products or services that are competitive with any Boston Scientific products or services continuing to be sold, licensed or marketed or under development while the Employee worked for Boston Scientific.

(b) "**activities that compete with the business of Boston Scientific**" mean activities or services on behalf of a party other than Boston Scientific that are reasonably related to or competitive with:

(i) activities or services that the Employee is providing to or for Boston Scientific at the time his or her employment ends;

(ii) current or future technologies, products or services, including technologies, products or services in development, that the Employee is working on or with, or has worked on or with, within two (2) years prior to the termination of employment with Boston Scientific; or

(iii) current or future technologies, products or services, including technologies, products or services in development, about which the Employee has acquired Proprietary Information.

For these purposes, activities "that are reasonably related to or competitive with" (i), (ii) or (iii) above include, without limitation, activities in preparation to offer products or services that would compete in any applicable market with products or services of Boston Scientific.

(c) "**Customer of Boston Scientific**" means any person or entity either (i) with whom or which the Employee had Material Contact during the last twelve (12) months of the Employee's employment with Boston Scientific; or (ii) about whom or which Boston Scientific had obtained Proprietary Information that was known to the Employee during the Employee's employment with Boston Scientific. For purposes of this Section 5(c), Material Contact means personal contact with a person or entity that was made in an effort to initiate or further a business relationship between Boston Scientific and the person or entity.

(d) "**Restricted Period**" means a period following termination of the Employee's employment, regardless of reason for termination. The length of the Restricted Period depends upon the Employee's compensation grade level at the time of termination of employment. Boston Scientific classifies employees for compensation purposes by compensation grade levels. Employees who do not know their grade level may obtain that information from Human Resources. Most positions have grade levels within a range of 50 to 230 ("**Non-Sales Grade Levels**"). Certain positions in the Company's Sales Organization have grade levels within a range that begins at 610 ("**Sales Grade Levels**").

If the Employee is classified with a Non-Sales Grade Level between and including 50 to 120 at termination of employment, the Restricted Period is one (1) year.

If the Employee is classified with a Non-Sales Grade Level of 130 or above at termination of employment, the Restricted Period is two (2) years.

If the Employee is classified with a Sales Grade Level between and including 610 to 670 at termination of employment, the Restricted Period is one (1) year.

If the Employee is classified with a Sales Grade Level of 680 or above at termination of employment, the Restricted Period is two (2) years.

6. <u>Non-Solicitation – Customers and Suppliers</u>. While employed by Boston Scientific and during the Restricted Period, the Employee shall not, in any capacity, directly or indirectly, personally or through another person, (i) solicit the business or patronage of any Customer of Boston Scientific for or on behalf of a business that competes with Boston Scientific, (ii) divert, entice, or otherwise take away from Boston Scientific the business or patronage of any Customer of Boston Scientific, or attempt to do so, or (iii) solicit or induce any vendor, supplier or Customer of Boston Scientific to terminate or reduce its relationship with Boston Scientific.

7. <u>Non-Solicitation – Employees</u>.  While employed by Boston Scientific and during the Restricted Period, the Employee shall not, in any capacity, directly or indirectly, personally or through another person, (a) assist in the hiring, retention, or employment of (i) any individual who is an employee or consultant of Boston Scientific or (ii) any individual who was an employee or consultant of Boston Scientific during the six (6) month period preceding the Employee's last date of employment with Boston Scientific, unless the individual was laid off by Boston Scientific or (b) on behalf of any person or entity, recruit, solicit or induce any director, employee, agent, consultant or other person affiliated with Boston Scientific to terminate or alter his or her employment or other relationship with Boston Scientific.

8. <u>Unfair Competition</u>.

(a) While employed by Boston Scientific and during the Restricted Period, the Employee shall not engage, directly or indirectly, in activities that compete with the business of Boston Scientific and shall not accept employment with, advise, provide consulting services to or acquire any interest in (other than an investment interest of less than 1% of the total outstanding shares of a publicly-traded company) a business that competes with Boston Scientific in any capacity in which the Employee would, directly or indirectly, engage in activities that compete with the business of Boston Scientific, without first obtaining the prior written approval from the EVP HR.

(b) **The Employee has carefully read and considered the provisions of this Section 8 and Attachment A and agrees that they are fair and reasonable, will not unreasonably prohibit the Employee from engaging in other employment following the termination of employment with Boston Scientific, and are necessary for the protection of the interests of Boston Scientific.  Notwithstanding anything to the contrary in this Agreement, if the Employee desires to become employed by, advise or provide consulting services to a business that competes with Boston Scientific, the Employee shall first inform the EVP HR and Boston Scientific shall evaluate, within its sole discretion, whether or not to allow the Employee a limited release from this Section 8.  To the extent any such limited release is authorized according to this Section 8(b), such release must be in writing signed by the EVP HR.**

9. <u>Publications</u>.  The Employee agrees that prior to submission or disclosure for possible publication or dissemination outside Boston Scientific of any writings or materials referencing information concerning Boston Scientific's business or any current or anticipated development, the Employee shall, during the Restricted Period, deliver a copy of such information to the EVP HR for review.  Boston Scientific agrees to notify the Employee in writing within thirty days of its receipt of this information whether it contains any Proprietary Information, and the Employee agrees to make any and all deletions and revisions requested by Boston Scientific.  Boston Scientific's good faith judgment in these matters will be final.  At Boston Scientific's sole discretion and upon its request, the Employee shall also delete any reference to Boston Scientific from any such writings or materials.

10. <u>Notification to New or Prospective Employer</u>.  Consistent with the Employee's obligations and responsibilities under this Agreement, the Employee shall, upon contemplation of or following termination of employment with Boston Scientific, notify any new or prospective employer of these obligations and responsibilities.  The Employee acknowledges that Boston Scientific may notify any new or prospective employer of the Employee of such obligations and responsibilities and authorizes Boston Scientific to do so.

11. <u>Conflicting Agreements</u>.  The Employee states that the Employee is free to enter into this Agreement, that the Employee has not made and shall not make any agreements (oral or in writing) in conflict with this Agreement, and shall not disclose to Boston Scientific or use for Boston Scientific's benefit, any trade secrets, confidential or proprietary information that is the property of any other person or entity. The Employee also states that the Employee shall abide by any valid ongoing obligations to any prior employer or entity, including but not limited to any obligation not to solicit former co-workers.

12. <u>Independence of the Employee's Obligations</u>.

(a) Each of the Employee's obligations to be performed under this Agreement shall be interpreted independent of (i) any other provisions of this Agreement, (ii) any other obligation Boston Scientific may have toward the Employee.

(b) The existence of any claims by the Employee against Boston Scientific, whether based on this Agreement or otherwise, shall not be a defense to the enforcement by Boston Scientific of any of the Employee's obligations under this Agreement.

13. <u>Enforceability and Severability</u>.  In the event that any portion of this Agreement shall be determined to be unenforceable, the remainder of this Agreement shall be enforced to the fullest extent possible and the unenforceable portion shall be amended by a court of competent jurisdiction, or otherwise thereafter shall be interpreted, to reflect as nearly as possible the parties' intent.  In the event that any portion of this Agreement is determined by any court of competent jurisdiction to be unenforceable by reason of excessive scope as to geographic, temporal, or functional coverage, such portion shall be deemed to extend only over the maximum geographic, temporal, and

functional scope as to which it may be enforceable. If such amendment or interpretation is not possible, the unenforceable portion will be severed from the remainder of this Agreement and the remainder of this Agreement shall be enforced to the fullest extent.

14. Remedies for Breach.  The Employee understands that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of Boston Scientific, and the Employee considers them reasonable for such purpose.  Any breach of this Agreement is likely to cause Boston Scientific substantial and irrevocable damage and therefore, in addition to such other remedies which may be available, Boston Scientific will be entitled to specific performance and other injunctive relief.  The Employee agrees that if the Employee violates any of the Employee's obligations under this Agreement, the Employee shall, in addition to any and all other remedies, pay Boston Scientific all reasonable attorney's fees and court costs that it incurs in enforcing its rights under this Agreement.

15. Waiver.  The failure of Boston Scientific to insist upon strict compliance with any of the terms of this Agreement shall not be deemed a waiver of any of its rights.

16. Assignability.  This Agreement shall not be assignable or delegable by the Employee.  Boston Scientific may, at its option and without consent of the Employee, assign its rights and duties hereunder to any other person or entity in connection with any form of corporate reorganization, any sale or merger of all or part of Boston Scientific or any acquisition of Boston Scientific.

17. Interpretation.  The terms of this Agreement shall not be interpreted or construed in favor of the Employee on the basis that Boston Scientific was the drafter of this Agreement.  This Agreement shall be construed as a whole and in accordance with its fair meaning.

18. Governing Law; Consent to Jurisdiction.  Although the Employee may work for Boston Scientific in various locations, the Employee agrees that this Agreement shall be interpreted and enforced as a Massachusetts contract and shall be interpreted and enforced in accordance with the internal laws of the Commonwealth of Massachusetts without regard to its conflict of law rules.  Both parties agree that any action concerning this Agreement shall be commenced exclusively in the courts (including the Federal Courts) in either (i) the Commonwealth of Massachusetts or (ii)  the state of the Employee's last (or, if still employed, the Employee's current) primary work location for Boston Scientific.

19. **Employment at Will.  Nothing in this Agreement affects the at will employment relationship between the parties. The relationship may be terminated by either the Employee or Boston Scientific without reason or cause at any time, and with or without notice**.

20. Entire Agreement.  This document, including its two attachments [Attachment A, State Law Modifications and Attachment B, List of Inventions], contains the entire agreement of the parties.  It may not be changed orally, but only by an agreement in writing signed by the Employee and the EVP HR.  This Agreement supersedes any and all prior agreements and understandings between the parties with respect to the matters addressed in this Agreement.

This Agreement is signed under seal as of the date below.

THIS AGREEMENT AFFECTS THE LEGAL RIGHTS OF THE EMPLOYEE.  BOSTON SCIENTIFIC ENCOURAGES THE EMPLOYEE TO READ THIS AGREEMENT FULLY AND CAREFULLY.

BY SIGNING BELOW, THE EMPLOYEE ACKNOWLEDGES THAT THE EMPLOYEE HAS READ THE ABOVE AGREEMENT CONCERNING EMPLOYMENT AND ITS ATTACHMENTS AND UNDERSTANDS AND AGREES TO EACH OF THEIR PROVISIONS.

1037347

Lee, Dongchul


Lee, Dongchul
electronically acknowledged this Agreement on the BNY Mellon website on the date and time shown below.
10/21/2009  12:57:47 PM

# AGREEMENT CONCERNING EMPLOYMENT

<u>ATTACHMENT A</u>

State Law Modifications

The purpose of this Attachment A to the Agreement Concerning Employment between the Employee and Boston Scientific is to modify certain terms of the Agreement while the Employee is providing services to Boston Scientific in the states described below.

The Agreement remains in effect and applies to the Employee while the Employee is employed by Boston Scientific. **However**, if the Employee is based by Boston Scientific in one of the states listed below, the provisions for that state modify the Agreement as indicated, **but only while the Employee remains based by Boston Scientific in that state or territory**. If, at any time, the Employee is relocated by Boston Scientific to another state, that state's specific provisions, if any, will apply instead of the provisions that previously applied to the Employee in the Employee's former location. If no specific modifications are listed for the state in which the Employee is employed, the Agreement remains "as is" without any modification by this Attachment A. For purposes of the Agreement, the Employee is employed in only one state at any given time.

In addition to the modifications with respect to employment in various states, a modification applicable only to attorneys due to state law rules of professional responsibility is also set forth at the end of this Attachment A.

While the Employee is employed in **ARKANSAS**:

*The following replaces Section 5(c) of the Agreement:*

"**Customer of Boston Scientific**" means any person or entity whom or which the Employee solicited directly or indirectly, in whole or in part, on behalf of Boston Scientific to provide any technology, product or service during the Employee's employment; provided that if such person or entity is no longer receiving any such technology, product or service from Boston Scientific when the Employee's employment terminates, that person or entity will only be considered a Customer of Boston Scientific if its relationship with Boston Scientific ends because of the efforts of the Employee.

*While the Employee is employed by Boston Scientific in ARKANSAS, disregard the post-employment aspect of Section 4(e) and the post-employment restrictions in Section 8 of the Agreement. They do not apply to the Employee.*

While the Employee is employed in **CALIFORNIA**:

*The following replaces Section 6 of the Agreement:*

While employed by Boston Scientific, the Employee shall not, in any capacity, directly or indirectly, personally or through another person, (i) solicit the business or patronage of any Customer of Boston Scientific for or on behalf of a business that competes with Boston Scientific, (ii) divert, entice, or otherwise take away from Boston Scientific the business or patronage of any Customer of Boston Scientific, or attempt to do so, or (iii) solicit or induce any vendor, supplier or Customer of Boston Scientific to terminate or reduce its relationship with Boston Scientific. In addition, during the Restricted Period, the Employee shall not, in any capacity, directly or indirectly, personally or through another person, use Proprietary Information to engage in any of (i), (ii) or (iii) as set forth in the preceding sentence.

*While the Employee is employed by Boston Scientific in CALIFORNIA, disregard the post-employment aspect of Section 4(e) and the post-employment restrictions in Section 8 of the Agreement. They do not apply to the Employee.*

While the Employee is Employed in **COLORADO**:

The post-employment aspect of Section 4(e) and the post-employment restrictions in Sections 6 and 8 apply to the Employee only to the extent that the Employee is employed by Boston Scientific in an executive or management position; as an officer; or as professional staff to executive or management personnel.

While the Employee is employed in **GEORGIA**:

*The following replaces Section 3(c) of the Agreement:*

(c)   The Employee shall not, without express prior written authorization from the EVP HR during or after the term of his or her employment, disclose any Proprietary Information, or anything relating to it, to any person other than personnel authorized by

Boston Scientific. The Employee further agrees not to (i) use any such information for personal benefit or for any purpose other than furthering the legitimate business interests of Boston Scientific; or (ii) disclose or use for personal benefit any information furnished by a third party to Boston Scientific in confidence.

With respect to Proprietary Information that constitutes a trade secret, these restrictions in this Section 3(c) shall continue until such trade secret becomes generally known in the trade or to the public through no fault of the Employee. With respect to any other Proprietary Information, these restrictions shall continue until the earlier of (i) the date such information becomes generally known in the trade or to the public through no fault of the Employee, or (ii) five (5) years following termination of the Employee's employment with Boston Scientific.

*The following is added to Section 7 of the Agreement*:

During the Restricted Period, this covenant applies only to employees, officers, or consultants of Boston Scientific with whom the Employee had Material Contact during the last two years of the Employee's employment with Boston Scientific. For the purposes of this Section 7, "**Material Contact**" means direct personal contact between the Employee and such employee, officer or consultant of Boston Scientific in the course of the performance of the Employee's job duties on behalf of Boston Scientific.

*While the Employee is employed by Boston Scientific in GEORGIA, disregard the post-employment aspect of Section 4(e) and the post-employment restrictions in Section 8 of the Agreement. They do not apply to the Employee.*

While the Employee is employed in **LOUISIANA**:

*The following replaces Section 8 of the Agreement*:

(a) During the Restricted Period, the Employee shall not, in the Parish of Louisiana in which the Employee is employed by Boston Scientific and any other Louisiana Parish abutting such Parish**,** whether as a partner, owner, shareholder, co-venturer, member, or in some other ownership capacity, engage in or assist in activities that compete with the business of Boston Scientific.

(b) During the Restricted Period, the Employee shall not, anywhere outside the State of Louisiana, whether as a partner, owner, shareholder, co-venturer, member, or in some other ownership capacity, engage in or assist in activities that compete with the business of Boston Scientific.

While the Employee is employed in **NEBRASKA**:

*The following replaces Section 5(c) of the Agreement:*

"**Customer of Boston Scientific**" means any person or entity who or which is receiving any technology, product or service from Boston Scientific on the date of the termination of the Employee's employment with Boston Scientific and with whom or which the Employee did business and had contact on behalf of Boston Scientific.

*The following replaces Section 6 of the Agreement:*

While employed by Boston Scientific, the Employee shall not, in any capacity, directly or indirectly, personally or through another person, (i) solicit the business or patronage of any Customer of Boston Scientific for or on behalf of a business that competes with Boston Scientific, (ii) divert, entice, or otherwise take away from Boston Scientific the business or patronage of any Customer of Boston Scientific, or attempt to do so, or (iii) solicit or induce any vendor, supplier or Customer of Boston Scientific to terminate or reduce its relationship with Boston Scientific. In addition, during the Restricted Period, the Employee shall not, in any capacity, directly or indirectly, personally or through another person, engage in any activities that compete with the business of Boston Scientific to the extent those activities are for any Customer of Boston Scientific.

*While the Employee is employed by Boston Scientific in NEBRASKA, disregard the post-employment aspect of Section 4(e) and the post-employment restrictions in Section 8 of the Agreement. They do not apply to the Employee.*

While the Employee is employed in **NORTH DAKOTA**:

*The following is added to Section 6 of the Agreement:*

During the Restricted Period, this Section 6 applies to the Employee only to the extent reasonably necessary to protect Boston Scientific's Proprietary Information.

*While the Employee is employed by Boston Scientific in NORTH DAKOTA, disregard the post employment aspect of Section 4(e) and the post-employment restrictions in Section 8 of the Agreement. They do not apply to the Employee.*

While the Employee is employed in **OREGON**:

Sections 4(e) and 8 only apply to the Employee during the Restricted Period to the extent that the Employee is engaged in administrative, executive or professional work for Boston Scientific and performs predominantly intellectual, managerial or creative tasks, exercises discretion and independent judgment and earns a salary and is paid on a salary basis.

Sections 4 (e) and 8 only apply to the Employee during the Restricted Period to the extent the total amount of the Employee's annual gross salary and commissions, calculated on an annual basis, at the time of the Employee's termination exceeds the median family income for a four-person family, as determined by the United States Census Bureau for the most recent year available at the time of the Employee's termination from employment.

While the Employee is employed in **TEXAS**:

*The following is added to Section 8 of the Agreement*:

> (c) <u>Scope of Unfair Competition Protection</u>:  During the course of the Employee's employment with Boston Scientific, Boston Scientific will provide the Employee with Proprietary Information, Proprietary Inventions, customer, vendor and employee goodwill or specialized training and as a result this Section 8, as well as the post-employment aspect of Section 4(e), are intended to protect Boston Scientific's interests in Proprietary Information, Proprietary Inventions, customer, vendor and employee goodwill, and specialized training with which the Employee is provided during the course of employment for Boston Scientific.

While the Employee is employed in **VIRGINIA**:

*The following is added to Section 7 of the Agreement*:

> During the Restricted Period, this covenant applies only to employees, officers, or consultants of Boston Scientific with whom the Employee had Material Contact during the last two years of the Employee's employment with Boston Scientific.  For the purposes of this Section 7, "**Material Contact**" means direct personal contact between the Employee and such employee, officer or consultant of Boston Scientific in the course of the performance of the Employee's job duties on behalf of Boston Scientific.

*While the Employee is employed by Boston Scientific in VIRGINIA, disregard the post-employment aspect of Section 4(e) and the post-employment restrictions in Section 8 of the Agreement.  They do not apply to the Employee.*

While the Employee is employed in **WISCONSIN**:

*The following replaces Section 5(c) of the Agreement:*

"**Customer of Boston Scientific**" means any person or entity who (i) is receiving any technology, product or service from Boston Scientific on the date of the termination of the Employee's employment with Boston Scientific or (ii) received any such technology, product or service at any time during the Employee's employment with Boston Scientific provided that if such person or entity is no longer receiving any such technology, product or service from Boston Scientific it is because of the efforts of the Employee.

*The following is added to Section 7 of the Agreement*:

> During the Restricted Period, this covenant applies only to employees, officers, or consultants of Boston Scientific with whom the Employee had Material Contact during the last two years of the Employee's employment with Boston Scientific.  For the purposes of this Section 7, "**Material Contact**" means direct personal contact between the Employee and such employee, officer or consultant of Boston Scientific in the course of the performance of the Employee's job duties on behalf of Boston Scientific.

*While the Employee is employed by Boston Scientific in WISCONSIN, disregard the post-employment aspect of Section 4(e) and the post-employment restrictions in Section 8 of the Agreement.  They do not apply to the Employee.*

If the Employee is an attorney in any state:

Notwithstanding anything in Section 8 to the contrary, Section 8 shall not apply to the Employee's practice of law after the termination of the Employee's employment.

**AGREEMENT CONCERNING EMPLOYMENT**

**A<small>TTACHMENT</small> B**

**List of Inventions**

List of all inventions or improvements (referred to in Section 4(d) of the Agreement) made by the Employee, alone or jointly with others, prior to joining Boston Scientific.

| **Right, Title or Interest** (If none, please write "NONE".) | **Date Acquired** | **Identifying Number or Brief Description of Inventions or Improvements** |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Name of Employee: _____
(Please Print)

_____
(Please Sign)

_____
Date

LIBB/1604378.5